UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARIF KAZAL, et al.,

     Plaintiffs,

v.                                     CASE NO. 8:17-cv-2945-T-23AAS

MATTHEW PRICE,

     Defendant.

_____/

## ORDER

The latest spat in a protracted dispute between several Australian businessmen, this action involves (at least) six actions on two continents. Four of the Kazal brothers sue (Doc. 1) Matthew Price, a former employee of a company owned by Australian businessman Rodric David, for tortious interference with a business relation and for intentional infliction of emotional distress. The complaint alleges that Price runs five websites that host "defamatory" and "untrue" content about the Kazal brothers.[1]

### BACKGROUND

The websites, which mostly re-publish news articles from the Australian media, detail a tumultuous history between the Kazal brothers and David. The story begins several decades ago, when the eight Kazal brothers emigrated from Lebanon to Australia. While two brothers opened a restaurant in Sydney, another brother

---

[1] Charifkazal.com, kazalfamilytruth.com, karlkazal.com, adamkazal.com, and tonykazal.com. Two of the websites (kazalfamilytruth.com and karlkazal.com) appear defunct.

(Tony) worked for several years for the royal family in the United Arab Emirates. According to one story from the *Sydney Morning Herald*, Tony and Karl "leveraged their status" with "Gulf diplomats" to arrange meetings between the Gulf royalty and Australian businessmen.[2]

Meanwhile, other Kazal brothers opened restaurants and bars in historic buildings owned by the Australian government and leased to private investors.  In one instance, the Kazals reportedly convinced the Australian government to spend more than six million dollars renovating one of the buildings.  According to the *Sydney Morning Herald*, linked on Price's websites, an unlawful bribe from the Kazals to a government official secured the government's agreement to pay for the renovation.  Several newspapers report that Australia's Independent Commission against Corruption later charged Charif Kazal with bribery.

While several Kazal brothers grew the restaurant and bar business, another brother partnered with David, the Australian businessman.  David and Kazal purportedly agreed to buy an unprofitable waste-recycling operation in Sydney and to invest in the operation's turn-around.  One exposé from a Sydney paper reported that David spent several million dollars on the waste operation, but the Kazal family allegedly failed to pay its share (according to the exposé, Libya's sovereign investment fund promised the Kazals $2.5 million; for reasons not explained in the story, the "Gaddafi-controlled fund" reportedly never paid the money).  After the

---

[2] Linton Besser, "Bad Company," *Sydney Morning Herald* (published Mar. 19, 2013), *available at* http://www.smh.com.au/nsw/bad-company-20130310-2fuum.html.

Kazals sued David in the Cayman Islands over the failed investment, a Cayman judge reportedly found that David, whom the Kazal brothers accused of attempting to "steal" the Kazals' half of the company, breached a fiduciary duty and that the Kazal brothers breached a promise to finance part of the waste operation.

In addition to the Cayman litigation, actions involving David (or David's company, Thunder Studios), Price, and the Kazals pend in the Central District of California (*Thunder Studios, Inc. v. Charif Kazal, et al.*, 2:17-cv-871-AB-SS (C.D. Cal. Feb. 2, 2017), the Superior Court of Los Angeles (*Charif Kazal et al. v. Price*, case no. SC126477), and the Federal Court of Australia (*Thunder Studios v. Charif Kazal*, case no. 2014 NSD 850).

While David and a Kazal brother litigated in the Cayman Islands over the waste operation and another failed co-investment in Dubai, an Australian newspaper scrutinized another Kazal brother's purported connection to Hezbollah.  Tony Kazal purportedly agreed to convert several million units of an unspecified African currency into American dollars in exchange for a "lucrative commission."  A man in Beirut allegedly gave Kazal a bag of cash.  Citing an investigation by Lebanese police, the *Sydney Morning Herald* reports that both the man and the money belong to Hezbollah.[3]

---

[3] Linton Besser, "Two bags of money and a lot of trouble in Beirut," *Sydney Morning Herald* (published Mar. 16, 2013), *available at* http://www.smh.com.au/national/two-bags-of-money-and-a-lot-of-trouble-in-beirut-20130315-2g5v5.html.

The Middle District of Florida recently closed an action in which Adam Kazal sued Price and moved in an "emergency *ex parte* application" for leave to depose Price on less than a week's notice.  *Adam Kazal v. Matthew Price*, case no. 8:17-cv-2620-VMC-JSS (M.D. Fla. Nov. 2, 2017).  The application states that the Australian court ordered Kazal not to "make certain statements regarding David" (Doc. 1 at 2 in 8:17-cv-2620), but Kazal purportedly violated the order.  The Australian court held Kazal in criminal contempt and sentenced Kazal to eighteen months of imprisonment, which sentence an Australian appellate court affirmed in part and reversed in part.[4]  Appealing a second time, Kazal claimed that "inflammatory statements" on the websites created by Price infuriated Kazal and caused Kazal to violate the Australian court's order.

The November 2, 2017 *ex parte* application to the Middle District of Florida requested a subpoena compelling Price to appear for a deposition within six days.  On November 7, an order in case no. 8:17-cv-2620-VMC-JSS granted an "emergency motion to compel" Price's appearance at a deposition the next day.  Appearing through counsel the day of the deposition, Price submitted an "emergency motion to quash the subpoena," but the district judge denied the motion an hour later and without discussing the merits of Price's motion.

Appending the deposition to the complaint, the plaintiffs claim that Price posted "defamatory" and "untrue" content on the websites in an intentional effort to

---

[4] Kazal's sentence ends in May 2018.

inflict emotional distress and to interfere with an unspecified business relation.[5]

Also, the plaintiffs allege that schoolchildren tease or mock the children of Tony

Kazal about the purported connection to Hezbollah and about the purported

criminality.  Moving (Doc. 3) for a temporary restraining order and for a preliminary

injunction, the Kazals request that an order direct Price to "immediately remove

access to and/or the content" from the websites and that an order prohibit Price from

"making further statements . . . that the Plaintiffs are members of a terrorist

organization or otherwise involved in criminal or fraudulent activities."  (Doc. 3

at 15)

### DISCUSSION

An "extraordinary and drastic remedy," a preliminary injunction issues only if

the moving party shows (1) a substantial likelihood of success on the merits and (2)

an imminent and irreparable injury that will result absent an injunction.  Also, the

moving party must show (3) that the harm to the moving party from denying the

requested injunction outweighs the harm to the non-moving party from enjoining

specific conduct and (4) that creates no material injury to an important public

interest.  *Northeastern Fl. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville,*

*Fl.*, 896 F.3d 1283, 1284–85 (11th Cir. 1990).

---

[5] The deposition (Doc. 1 at 16–43) shows that Price controls the websites but says nothing
about the truth of the allegations reported by the Australian media and re-published on the websites.

**1. Likelihood of success on the merits**

Although the plaintiffs nominally sue for intentional infliction of emotional distress and for tortious interference with a business relation, the crux of the plaintiffs' claims is defamation.  Excluding jurisdictional and prefatory paragraphs, more than half of the complaint alludes to Price's allegedly "false," "untrue," or "defamatory" statements.  (Doc. 1 at ¶¶ 1, 2, 6, 23, 31, 32, 34, 35, 36, 37, 38, 39, 40, 41, 42, 45, 46, 48, 50, 57, 58, 59, 61, 67, and 70)  If true, the reporting from the Australian press might vindicate the content of Price's websites.  "Truth, of course, is a complete defense to a charge of libel."  *Dun & Bradstreet, Inc. v. Miller*, 398 F.2d 218, 223 (5th Cir. 1968); *accord Curtis Pub. Co. v. Butts*, 388 U.S. 130 (1967); *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).  And nothing appears "extreme" or "outrageous" about a defendant's re-publishing an accurate[6] news story (even though the story publicizes unflattering information).  The sparse record, which comprises an unverified complaint, the Price deposition, and several conclusory affidavits that deny the newspaper reports, precludes finding at this time that the plaintiffs likely will succeed on the merits.[7]

---

[6] Again, this order decides nothing about the accuracy of the website or the newspaper reports.

[7] Also, the plaintiffs' motion (Doc. 3) cites Florida law but offers no explanation why Florida law applies. The defendant, who moved to Florida in June 2017, designed and published the websites while in California. (Doc. 1 at 18 and 26)

**2. Irreparable harm**

Although Price published the websites between January and March 2016 and the plaintiffs learned about the websites around June 2016 (if not earlier), the plaintiffs waited nearly two years to sue.[8]  In *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244 (11th Cir. 2016), the plaintiff waited five months to request a preliminary injunction, and the district court denied the request.  Affirming the denial, *Wreal* observes that "a delay of even [] a few months" in moving for a preliminary injunction "militates against a finding of irreparable harm."  840 F.3d at 1248 (explaining that "the very idea of a preliminary injunction is premised on the need for speedy and urgent action to protect the plaintiff's rights").  If the five-month delay in *Wreal* militates against irreparable harm, the year-and-a-half delay in this action conclusively refutes the claim of an imminent and irreparable injury.

Also, the plaintiffs fail to explain the mechanism by which an injunction against Price's re-publishing news stories from the press remedies the plaintiffs' alleged injuries.  At least half a dozen newspaper stories[9] published by several newspapers report the information about which the plaintiffs sue (again, Price's websites mostly re-publish the newspaper stories, although the websites contains

---

[8] In the other Middle District of Florida action, Price cites (Doc. 12 at 4) an October 17, 2017 affidavit from Adam Kazal in which Adam admitted that the Kazals learned about the websites around June 2016. And the plaintiffs learned about Price's involvement with the websites almost a year ago.

[9] *See, e.g.*, Anthony Klan, "Kazal restaurant clan fights ex-partner over ICAC case," *The Australian* (published Aug. 1, 2016); Linton Besser, "Revealed: Kazal family's links to Gaddafi," *Newcastle Herald* (published May 8, 2011).

several so-called "memes" that appear nowhere in the newspapers).  Even if an injunction prohibits Price's speaking about the Kazal family, the information about the Kazal family remains easily accessible elsewhere on the Internet.  Because the plaintiffs fail to show clearly that an injunction against Price's speech remedies an imminent and irreparable injury, the request for a preliminary injunction warrants denial.

**3. Balance of harms**

An injunction issues only if the prospective harm to the moving party from denying the injunction outweighs the harm to the non-moving party from enjoining specific conduct.  According to the plaintiffs, schoolchildren tease or mock the children of plaintiff Tony Kazal about the reported criminality and about the reported connection to Hezbollah.  Also, the plaintiffs attribute to Price's websites a "loss of business."  An affidavit from the Kazal family's accountant claims that the websites "stilted the growth trajectory" of the family business but declines to identfy a business transaction that failed as a proximate result of the websites.  (Doc. 1 at 82)  Based on these purported harms, the plaintiffs claim that the balance-of-equities favors an injunction.

Insisting (without citation to anything other than the plaintiffs' conclusory affidavits) that the websites contain falsities, the plaintiffs state that Price will suffer "absolutely no harm" if an injunction restrains Price's speech.  (Doc. 3 at 11)  But a long line of Supreme Court decisions explains that a "prior restraint[] on speech and publication [is] the most serious and least tolerable infringement on [a person's] First

Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) (collecting decisions).  Under the First Amendment, a person maintains a weighty interest in free speech — an interest so great that the judiciary routinely refuses to enjoin speech before the final adjudication of the defendant's liability.  *See, e.g.*, *Gunder's Auto Center v. State Farm Ins.*, 617 F.Supp.2d 1222 (M.D. Fla. 2009) (denying the plaintiff's request for a preliminary injunction in a defamation and tortious-interference action); *Bollea v. Gawker Media, LLC*, 2012 WL 5509624 (M.D. Fla. Nov. 14, 2012) (Whittemore, J.) (denying the plaintiff's request for a preliminary injunction in a defamation and IIED action and explaining that "[i]n all but the most exceptional circumstances, an injunction restricting speech pending final resolution of constitutional concerns is impermissible"); *Roca Labs, Inc. v. Consumer Opinion Corp.*, 2014 WL 6389657 (M.D. Fla. Nov. 16, 2014) (denying the plaintiff's request for a preliminary injunction in a defamation and tortious-interference action).  In sum, Price's First Amendment interest weighs heavily against a preliminary injunction, and the plaintiffs fail to show clearly a balance-of-equities that favors restraining Price's speech.

## 4. Rule 65

The plaintiffs' request for a temporary restraining order and preliminary injunction violates at least three requirements in Rule 65, Federal Rules of Civil Procedure.  First, under Rule 65(b)(1)(B), the attorney for the party that requests a temporary restraining order must "certif[y] in writing any efforts made to give notice and the reasons why it should not be required."  The plaintiffs' attorneys fail to

submit an affidavit certifying an effort to notify Price about the motion and fail to

explain the necessity for an *ex parte* order.

Second, Rule 65(d)(1) requires that the preliminary injunction "state its terms

specifically" and "describe in reasonable detail — and not by referring to the

complaint or [an]other document — the act or acts restrained." Not a "mere

technical requirement[]," the specificity requirement in Rule 65(d) ensures that the

enjoined party — who faces a punitive consequence for willfully violating an

injunction — knows exactly what he can and cannot do. *Schmidt v. Lessard*, 414 U.S.

473, 476 (1974). A recent decision explains:

> [A]n injunction must describe the 'restrained or required conduct'
> in a manner that permits a judge asked to enforce the injunction
> to speedily and confidently determine whether some oppugned
> conduct offends the injunction and, if so, to design, impose, and
> enforce a remedy with assurance that any violation is contrary to
> the manifest and unmistakable terms of the injunction and is,
> therefore, knowing and willful. As an injunction increases in
> ambiguity and breadth and taxes increasingly a judge's
> interpretative ability, the inclination and legal authority of a
> judge either to require compliance or to punish non-compliance
> decreases at least proportionally.

*Regions Bank v. Kaplan*, 2017 WL 3446914 at *4 (M.D. Fla. Aug. 11, 2017).

The proposed injunction (Doc. 3 at 15) requires Price to remove from the

websites "false, malicious, or harmful information stating that Plaintiffs are

associated with terrorism, criminal misconduct, or fraud." Also, the proposed

injunction orders Price to "refrain from making further statements" about those

topics. (Doc. 3 at 15) Replete with mischievously broad phrases susceptible to more

than one reasonable interpretation, the requested injunction fails to adequately

apprise Price exactly what he can and cannot say.  For example, the proposed injunction offers no objective method to determine what constitutes "harmful information" and risks the possibility that a trivial comment, if subjectively offensive to a plaintiff, might violate the injunction (even if an impartial party familiar with the litigants' circumstances would find the comment innocuous).  Because the requested injunction fails to specify exactly what Price can and cannot say, the plaintiffs' motion warrants denial.

## CONCLUSION

For at least six reasons, the motion (Doc. 3) for a temporary restraining order and preliminary injunction is **DENIED**.  The plaintiffs fail to show a "substantial likelihood" of success on the merits, fail to show an imminent and irreparable injury, and fail to show a balance-of-equities that favors the injunction.  Also, the requested injunction violates the requirements in Rule 65 that the movant's attorney certify an effort to notify the non-moving party about the requested injunction, that the movant's attorney explain why notice is impracticable, and that the injunction describe with specificity the enjoined conduct.

## SHOW-CAUSE ORDER

By submitting an "emergency" motion for a temporary restraining order at 4:20 p.m. last night, the plaintiffs demanded the district court's immediate attention. A review of the record in this action and the other Middle District of Florida action shows nothing approaching an imminent and irreparable harm that requires enjoining the defendant's speech without permitting the defendant an opportunity to

respond.  In fact, the due-process concerns attendant to an *ex parte* restraint on the defendant's speech far outweigh the incremental harm, if any, that would result from the continued operation of the websites while the defendant responds to the motion for a preliminary injunction.  No later than **5 p.m.** on **DECEMBER 15, 2017**, attorneys Michael Whitt and Minyao Wang must explain in a single paper no longer than ten pages why an order should not require Whitt and Wang to remit $1000 each to the district court as a sanction for filing an unwarranted "emergency" motion.[10]

ORDERED in Tampa, Florida, on December 8, 2017.

_____

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[10]  Under Local Rule 3.01(e), "[t]he unwarranted designation of a motion as an emergency motion may result in the imposition of sanctions."