UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARIF KAZAL, ADAM KAZAL, TONY
KAZAL, and KARL KAZAL,

        Plaintiffs,

v.

MATTHEW PRICE,

        Defendant       /

Case No.: 8:17-cv-02945 (SDM) (AAS)

**Response to Order to Show Cause Why
<u>Sanctions Should Not Be Imposed On Plaintiffs' Counsel</u>**

      On December 8, the Court issued an Order [Dkt. No. 4] requiring attorneys Michael Whitt and Minyao Wang to explain why the Court should not issue another order requiring them each to pay $1,000 "as a sanction for filing an unwarranted 'emergency' motion." Mr. Whitt first respectfully states that, as explained in Paragraph 2 of his Declaration (the "Whitt Decl."), filed herewith, Mr. Wang is an attorney in the New York City office of Robins Kaplan who was working on the motion at Mr. Whitt's direction. Mr. Wang is admitted only in New York State. The decisions as to the substance included in, and the procedure followed with respect to the Motion were solely Mr. Whitt's.  As a result, if the Court ultimately decides the filing was improper and warrants a sanction, Mr. Whitt respectfully ask that he alone be held responsible, not Mr. Wang.

      Mr. Whitt also respectfully submits that a sanction against him is not warranted. He is not asking the Court to revisit the denial of the motion, but as explained in detail herein, he had a legitimate basis to submit the Motion for Temporary Restraining Order and Preliminary Injunction to prevent imminent physical and economic harm to Plaintiffs stemming from the websites. Both forms of harm, which were corroborated in sworn testimony submitted with the motion and amplified in a new affidavit from Plaintiff Tony Kazal submitted herewith, qualify as

an "emergency" under the judicial standard articulated in this District. Moreover, other courts in the country have recently granted temporary restraining orders in similar situations to prevent economic losses and emotional distress. Thus, the filing of the TRO motion was warranted.

## I. The motion was filed in good faith

Mr. Whitt had a good-faith basis to believe that the circumstances that prompted the motion warranted priority judicial attention. While counsel does not seek to challenge in any way the Court's decision denying relief, counsel wishes to provide additional context to demonstrate that the motion, while ultimately unsuccessful, was warranted and made in good faith. Whitt Decl. ¶ 3. Courts in this District have defined an "emergency" to include **either** "a threat of imminent physical harm" **or** "immediate, significant, and irreparable economic loss." *Hill Dermaceuticals, Inc. v. Anthem, Inc.*, No. 6:16-cv-833-ORL-40TBS, 2016 U.S. Dist. LEXIS 147409, at *1, n.1 (M.D. Fla. Oct. 25, 2016).[1] Both factors are present here.

The impetus for the motion was, first and foremost, a genuine and reasonable fear for the safety of the Kazal family, in particular the safety of Tony Kazal's two small children. Decl. of T. Kazal, dated Dec. 15, 2017 ("Kazal Decl.") ¶ 2. This concern was not only attested to under oath by the mother of the children, it was also confirmed in a sworn statement by a recognized security expert and a former senior member of the Australian police, Craig Sheridan. *See* Compl.

---

[1] *See also Kalch v. Raytheon Tech. Servs. Co., LLC,* 2017 U.S. Dist. LEXIS 106789, at *3 (M.D. Fla. July 11, 2017) ("Emergencies generally involve risks to the health and safety of individuals . . . ."); *Privitera v. Amber Hill Farm, L.L.C.*, 2012 U.S. Dist. LEXIS 72562, *4 (M.D. Fla. May 24, 2012) (emergencies include situations where "safety is at stake, [or something] that is irreplaceable or for which compensation would not be available is in jeopardy."); *Suntrust Equip. Fin. & Leasing, Corp. v. Beliveau*, 2012 U.S. Dist. LEXIS 14360, at *2 (M.D. Fla. Feb. 7, 2012) (TRO granted to prevent loss of client confidence and trust, loss of goodwill, loss of business reputation, damage to legitimate business interests, and present and future economic loss); *Godwin Pumps of Am., Inc. v. Ramer*, 2011 U.S. Dist. LEXIS 73754, at *23 (M.D. Fla. July 8, 2011) (the "loss of customers and goodwill" warranted preliminary injunctive relief).

[Dkt. No. 1] Exs. D and E. The Declarations demonstrate that this is fundamentally different from playground teasing. The Kazals have been understandably distraught at the thought that some physical harm might befall their young children. Kazal Decl. ¶ 2.

Mr. Sheridan has specifically recommended, based on his over thirty years of professional experience, the removal through the judicial process of inaccurate information from the websites as a means of alleviating the safety threat to the Kazal family. *See* Ex. D ¶¶ 10–11. Although, as the Court noted, the websites have been up for some time, the harassment of the children has been increasing in frequency over the past few weeks, which is a new circumstance that prompted the filing of the motion. *See* Compl. [Dkt. No. 1] Ex. E ¶ 5.

Mr. Whitt respectfully submits that when presented with the judgment of a seasoned security professional, Mr. Sheridan, in a sworn affidavit that the Kazal family's increasingly fragile security situation would improve if certain information was removed from the websites, he had a good-faith basis to bring the matter to the Court's immediate attention. Mr. Whitt respects the fact that after reviewing the materials, the Court ultimately determined that no immediate relief was appropriate. He is not seeking reversal of that decision. But the denial of the motion on the merits does not negate the fact that it was professionally proper for Mr. Whitt to advocate for his clients, through the filing of a TRO motion, for immediate relief.

Second, Plaintiff Charif Kazal and his accountant already provided sworn testimony to the Court regarding the economic losses his family business has been experiencing as a result of the dissemination of information from the websites. *See* Compl. [Dkt. No. 1] Ex. B ¶¶ 7–9 and Ex. C ¶ 5. Specifically, the family has been denied loans by banks with which it has had long-standing relationships and has been rebuffed by business partners who cited to the information

on the websites. As a result, the family was required to sell assets to maintain its cash flow liquidity. Compl. [Dkt. No. 1] Ex. B ¶ 7–9; Ex. C ¶ 5.

While secondary to the concerns for the physical safety of the Kazal families, additional details regarding the substantial harm to the Kazals' business interests may further aid the Court in understanding the good-faith basis for the motion. Whitt Decl. ¶ 4. For example, earlier this year, Tony Kazal was in advanced discussions with the Senior Director of Global Education Business Strategy for National Geographic Magazine regarding the printing and distribution of the company's Education Magazine throughout Catholic schools in the Middle East. Kazal Decl. ¶ 4. But when it came time to finalize the contract, Mr. Kazal's counterpart at National Geographic stopped responding. *Id.* The feedback that Mr. Kazal ultimately received through a mutual contact was that, as long as the website www.tonykazal.com remained active, Mr. Kazal would never be able to close a deal with any prudent business that performs a simple Google search of its potential business partners. *Id.*

Similarly, Tony Kazal engaged in extensive discussions with the Founder and CEO of a company called Channel Georgia, which is responsible for introducing investors to opportunities in the former Soviet republic of Georgia. *Id.* ¶ 5. Mr. Kazal had offered to connect the Georgian government with a global Fortune 500 company based in China that was interested in investing in major infrastructure projects worth up to $1 billion in Georgia, including redevelopment of the Anaklia Sea Port, road construction, water utilities, and energy projects. *Id.* ¶ 5. Productive meetings were held and memoranda of understanding were signed, but the deal was never finalized. *Id.* ¶ 5. Mr. Kazal's contact at Channel Georgia was informed that Mr. Kazal could not be recommended for any projects in Georgia because of Mr. Kazal's online profile at www.tonykazal.com suggesting that he had affiliations with terrorists and criminals. *Id.* ¶ 5.

It has been long held that under Florida law that a restraining order can be entered, consistent with the First Amendment, enjoining the dissemination of false information being used in the furtherance of the commission of another tort. *Zimmerman v. D.C.A. at Welleby, Inc.*, 505 So.2d 1371 (Fla. 4th DCA 1987); *Murtagh v. Hurley*, 40 So.3d 62 (Fla. 2d DCA), *review denied*, 51 So.3d 1155 (Fla. 2010). Here, the complaint and the motion, supported by sworn affidavits, plausibly alleged that the torts of tortious interference with business relationships and intentional infliction of emotional distress were being committed using false information contained on the websites.

At least two courts have recently granted injunctive relief directing the immediate removal of online materials based on representations from plaintiffs that the challenged materials were impeding their commercial interests. For example, in *Muhaisen v. Doe*, 2017 U.S. Dist. LEXIS 147370, at *1 (D. Colo. Sept. 12, 2017), YouTube videos posted by John Doe and Jane Doe defendants alleged that members of a law firm were engaged in "domestic violence, assault, homicide, drug use, and fraudulent legal practices." Plaintiffs in that case informed the court that the YouTube videos appeared prominently in Internet search results and the firm has received inquiries about the videos and their contents. *Id*. at *5. In granting the motion for TRO, the court concluded that an attorney "depends in part on his reputation" and that "as a consequence of operating in a competitive environment, plaintiffs have lost business and are likely to lose future business to some of their competitors." *Id*. at *5–6. Accordingly, the court directed that the offending videos be taken down on an interim basis. *Id*. at *8.

Likewise, a state court judge in Seattle, Washington directed ex parte in October 2017 that an individual immediately remove statements posted to the Internet about a prominent Chinese businessman based on **generic** allegations from plaintiff that the challenged statements

5

were inflicting distress on plaintiff's family members and interfering with his efforts to raise capital. *See* Whitt Decl. Ex. A at 6–7 and Ex. B. In that case, it was only generally alleged that Defendant's "personal reputation is closely connected to company's ability to raise capital." Whitt Decl. Ex. A at 7. Unlike in the affidavits submitted with the motion, there was no representation that **specific** deals were not consummated or that plaintiff was rebuffed by a source of potential capital due to the online statements. The court nevertheless granted a temporary restraining order within hours of its filing. *See* Whitt. Decl. Ex. B.

Again, Mr. Whitt is not re-litigating the motion, but is merely pointing out that given that Florida law permits entry of injunctive relief to enjoin publication of information being used in furtherance of another tort and given the recent case law in which relief was granted under comparable circumstances, his decision to seek the same relief here for his client was made in good faith.

## II. Plaintiffs has a good faith basis to invoke Florida law.

In its Order, the Court correctly noted that certain of the information contained on the websites had previously been included in a series of newspaper articles. Order at 1. The Court criticized plaintiffs for "fail[ing] to explain the mechanism by which an injunction against Mr. Price's re-publishing news stories from the press [would] remed[y] the plaintiff's alleged injuries." *Id.* at 7. Mr. Whitt takes responsibility for this lack of clarity, as he should have emphasized why the news articles containing some of the false information included on the websites have not caused the same level of harm that the websites themselves have caused. Whitt Decl. ¶ 5. As set forth in Paragraph 39 of the complaint and incorporated by reference in the motion, Mr. Price has purposely and maliciously employed an automated program to "re-post" the same information on a regular and ongoing basis so that it appears as new information on the

Internet with a continuously updated "new" publication date, *i.e.*, when users search for the name "Kazal," the Websites are among the first hits to appear as **current** stories **because of** this program—a program that is **not** used by the newspapers that previously published stories containing similar false information. Compl. [Dkt. No. 1] Ex. A at 43:12-15, 44:18-45:16. Thus, while the old newspaper stories recede into the annals of history, supplanted by more recent (and accurate) news about the Kazals, Mr. Price's inaccurate representations on the websites do not. That is why the Kazals believed that the entry of interim injunctive relief could have resulted in a cessation (or at least a significant reduction) of the irreparable harm the family is experiencing. Kazal Decl. ¶ 6.

Counsel submits that because Defendant, while living in Florida, runs this automatic program to increase the "hits" for the websites, the torts are occurring daily in Florida and there is a good-faith basis for the invocation of Florida law.[2]

## III. The Motion Sought Only Limited Relief

Counsel wish to clarify that the Kazals did not seek through the motion a complete shutdown of the websites.[3] *See* Motion at 2. Rather, the motion sought only the removal of a

---

[2] *See Abbas v. Foreign Policy Group, LLC*, 783 F. 3d 1328, 1338, n.6 (D.C. Cir. 2015) (applying District of Columbia law in action instituted by a foreign national living in the Middle East regarding statements posted on the Internet by defendants living and working in Washington DC).

[3] For the avoidance of doubt, the Kazals submit that the accusations contained in the newspaper articles are false and will seek to establish that contention during the merits stage of the case. For purposes of providing the Court some additional detail as to why Plaintiffs have a good faith belief that Defendant is unlikely to prevail with a "truth" defense, it is worth noting that the newspaper articles selectively omit the critical facts that: (i) Australian prosecutors rejected the recommendation by the Independent Commission Against Corruption (the "ICAC") to institute criminal proceedings against Mr. Kazal, Whitt Decl. Ex. C; (ii) the ICAC's own former acting inspector, a retired judge, has raised serious concerns about the procedural propriety of the ICAC's investigation, *id.* Ex. D; (iii) in proceedings instituted in Australia, the publisher of the news stories is refusing to defend the truth of its own reporting, *id.* Ex. E; (iv) the same publisher has offered an apology and a cash payment to Mr. Kazal with respect to a story alleging that he

narrow subset of information from the websites–gratuitous statements originating from Mr. Price that the Kazals are affiliated with terrorism, other criminal activity, or fraud. Whitt Decl. ¶ 6. As alleged in Paragraph 31 of the Complaint, Mr. Price "distorted, twisted, embellished, and manipulated the information" that Mr. Price culled from the Internet. The Kazals sought only to restrain Mr. Price from taking this unwarranted liberty with publicly available information.[4] To the extent the request was vague about what information should be removed, counsel apologizes to the Court for his inartful drafting. Whitt Decl. ¶ 6.

IV.  **Plaintiffs intended to and did provide notice to Defendant**

While this issue is not relevant to whether the filing of the motion was warranted or whether sanctions are appropriate, Mr. Whitt wishes to clarify that he intended to provide immediate notice of the motion to Mr. Price so that Mr. Price could respond if he so chose.[5] For this reason, Mr. Whitt believed that filing a certificate under Rule 65(b) was not necessary. *See* Whitt Decl. ¶ 17.

---

was engaged in bribery, *id.* Ex. F; and (iv) circumstantial evidence exists to suggest that Rodric David—a close personal friend of Mr. Price who is embroiled in litigation with the Kazals, and whose contentious relationship with the Kazals is admittedly Mr. Price's sole motivation for maintaining the websites, *see* Compl. [Dkt. No. 1] Ex. A at 51:3-19—may have been the sole (and therefore highly suspect) source for these stories, *id.* Ex. G.

[4] As an example of the unwarranted manipulation, the websites reprinted a speech by an Australian Senator accusing the Kazal family of various misdeeds. But Mr. Price also affixed a gavel next to the story with the word "GUILTY." Mr. Price's embellishment falsely suggests that the allegations were adjudged as established facts in a court of law in a country. Plaintiffs did not seek removal of the senator's speech from the websites, only the image of the gavel with the word "GUILTY."

[5] *See Vaughan v. Bank of Am., NA,*, 2010 U.S. Dist. LEXIS 87362 at *4 (S.D. Ala. Aug. 18, 2010) (construing a motion for TRO as a motion with notice and scheduling a hearing within seven days in which the adverse party was invited to appear); *Brown v. CIT Bank NA*, 2017 U.S. Dist. LEXIS 63200 (D. Ariz. Apr. 26, 2017) (plaintiff filed an application for a TRO, defendant filed an opposition and a hearing was then scheduled by the court to be held on two (2) days notice).

As electronic commencement of a case is not an option in this Court, a process server filed, at Mr. Whitt's instructions, the complaint and motion at the courthouse in person in downtown Tampa on the afternoon of December 7, just before the close of business. The process server was requested to serve the same papers (along with the summons) on Mr. Price at his residence in Pasco County on an expedited basis, preferably that evening. *See id.* ¶ 15 and Ex. H. Because of the distance to Mr. Price's residence from the courthouse, and because of the late hour, same-day service proved impracticable. *See id.* Service was successfully made on the afternoon of the next day. *See* Certificate of Service, dated Dec. 12, 2017 [Dkt. No. 7]. Mr. Whitt failed to anticipate the speed and efficiency with which the Court would act on the motion. Whitt Decl. ¶ 19. In hindsight, Mr. Whitt realizes that he should have specifically indicated in the motion papers that notice was being provided to Mr. Price. Counsel also realizes now that the better practice might have involved simply calling the court clerk's office or chambers to report that service on Mr. Price was in progress.[6] *Id.* Counsel sincerely regrets the oversight and the inconveniences this has caused the Court. *Id.*

---

[6] Counsel recognizes that the order attached to the motion states that relief is being provided without notice to the adverse party. Inclusion of this language, which was lifted from a previous form, was an inadvertent mistake for which counsel sincerely apologizes to the Court. Whitt Decl. ¶ 17.

## Conclusion

For all the foregoing reasons, counsel respectfully request that the Court not impose sanctions on them.

Respectfully submitted,

**ROBINS KAPLAN LLP**

/s/ Michael R. Whitt
Michael R. Whitt
Florida Bar No. 725020
mwhitt@robinskaplan.com
711 Fifth Avenue South, Suite 201
Naples, FL 34102
Tel: (239) 213-1976
Fax: (239) 213-1970

Minyao Wang
(*Pro hac vice* application to be filed)
mwang@robinskaplan.com
399 Park Avenue, Suite 3600
New York, NY 10022
Tel: (212) 980-7400
Fax: (212) 980-7499

Attorneys for Plaintiffs Charif Kazal, Adam Kazal, Tony Kazal, and Karl Kazal